Christopher R. Nolan
K. Blythe Daly
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel:    (212) 513-3200
Fax:    (212) 385 9010
Email: chris.nolan@hklaw.com
         blythe.daly@hklaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GROUPEMENT d'INTÉRÊT ECONOMIQUE, as lead underwriter (for itself and a group of marine war risk reinsurers comprised of AXA CORPORATE SOLUTIONS ASSURANCE SA, ALLIANZ GLOBAL CORPORATE & SPECIALTY SE, CAISSE CENTRALE DE REASSURANCE, HELVETIA ASSURANCES SA, MITSUI SUMITOMO INSURANCE CO. LTD. OF JAPAN, GENERALI IARD S.A., and MAPFRE GLOBAL RISKS COMPANIA INTERNATIONAL DE SEGUROS Y REASEGUROS), STARR INDEMNITY AND LIABILITY COMPANY, and SAMSUNG FIRE & MARINE INSURANCE CO. LTD., <br><br> Plaintiffs, <br><br> - against - <br><br> VALERO MARKETING AND SUPPLY COMPANY and SOUTHERN MARINE & AVIATION UNDERWRITERS, INC., <br><br> Defendants. | 16 Civ. _____ <br><br> **COMPLAINT for GENERAL AVERAGE CONTRIBUTION** |

Plaintiffs Groupement d'Intérêt Economique, as lead underwriter (for itself and a group

of marine war risk reinsurers comprised of Axa Corporate Solutions Assurance SA, Allianz

Global Corporate & Specialty SE, Caisse Centrale de Reassurance (SA), Helvetia Assurances

SA, Mitsui Sumitomo Insurance Co. Ltd. of Japan, Generali IARD S.A., and Mapfre Global

Risks Compania International de Seguros y Reaseguros), Starr Indemnity and Liability

Company, and Samsung Fire & Marine Insurance Co. Ltd. (collectively "Plaintiffs"), by and through their attorneys, Holland & Knight LLP, as and for their Complaint against Valero Marketing and Supply Company and Southern Marine & Aviation Underwriters, Inc. (collectively "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.      This is a maritime action arising out of the attack and seizure of a fully laden oil tanker *M/V SAMHO DREAM* (the "Vessel") on April 4, 2010 by armed pirates some 970 nautical miles off the coast of Somalia in the Indian Ocean.  After six months of intense negotiating and the payment of millions of dollars in ransom by Plaintiffs, the pirates released the Vessel.  The crew were then sent home for rehabilitation and the over $164,000,000 (invoice price) of crude oil was ultimately delivered to Defendant Valero Marketing and Supply Company.

2.      The kidnapping of the Vessel and her crew resulted in the declaration of General Average.  General Average is a maritime doctrine which relies upon certain rules to apportion loss among all interested parties when goods are sacrificed or vessels are damaged during the performance of a maritime voyage. It is based on the principle that when one partner in the adventure incurs expenses for the general safety of the ship and other cargo, the loss is assessed against all participants in proportion to their respective share in the adventure.

3.      After the Vessel was released, but before the crude oil was transshipped for on carriage to the United States, Defendants executed a General Average Guarantee and General Average Bond, certifying they would make full payment to shipowner interests once the General Average adjuster completed and presented the General Average adjustment.   Following presentation of the adjustment and demand for payment of cargo interest's portion in the amount of $8,179,001.25, Defendants have failed to make any payment to Plaintiffs.   Defendants'

failures form the subject of this suit.

## JURISDICTION AND VENUE

4.        This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5.        This Court has jurisdiction pursuant to 28 U.S.C. § 1333(1) in that the dispute concerns the recovery of general average contribution arising out of the seizure of the Vessel by Somali pirates.

6.        Alternatively, jurisdiction is proper pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and more than $75,000, exclusive of interest or costs, is at stake.

7.        Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants further agreed to the application of the general maritime law of the United States and for the resolution of any disputes arising out of the General Average Bond executed by Valero Marketing and Supply Company and the General Average Guarantee executed by Southern Marine & Aviation Underwriters, Inc. to be adjudicated in the U.S. District Court for the Southern District of New York.

8.        Venue is also proper in the United States District Court for the Southern District of New York on the basis of Defendants' systematic and continuous business contacts and presence in the United States and this district.

## THE PARTIES

9.        At all material times, Groupement d'Intérêt Economique ("Garex"), was and is a foreign corporation with a registered address at 9 Rue de Teheran, 75008 Paris, FRANCE. Garex is a plaintiff on behalf of itself and a group of marine war risk reinsurers members

comprised of the following in connection with the General Average losses herein:

    a.   Axa Corporate Solutions Assurance SA, a foreign corporation with a registered address at 4 Rue Jules Lefebvre, 75009 Paris, FRANCE;

    b.   Allianz Global Corporate & Specialty SE, a foreign corporation with a registered address at Koniginstrasse 28, 80802 Munich, GERMANY;

    c.   Caisse Centrale de Reassurance, a foreign corporation with a registered address at 31 Rue de Courcelles, 75008 Paris, FRANCE;

    d.   Helvetia Assurances SA, a foreign corporation with a registered address at 2 Rue Sainte-Marie, 92400 Courbevoie, FRANCE;

    e.   Mitsui Sumitomo Insurance Co. Ltd. of Japan, a foreign corporation with a registered address at 27-2, Shinkawa 2-chome, Chuo-ku, Tokyo, JAPAN;

    f.   Generali IARD S.A., a foreign corporation with a registered address at 7 Boulevard Haussmann, 75009 Paris, FRANCE; and

    g.   Mapfre Global Risks Compania International de Seguros y Reaseguros, a foreign corporation with a registered address at Carretera E. Pozuelo 52, 28222 Majadahonda, Madrid, SPAIN.

    10.   At all material times, Starr Indemnity and Liability Company ("Starr") was and is a domestic corporation with a registered address at 399 Park Avenue, New York, New York 10022.

    11.   At all material times, Samsung Fire & Marine Insurance Co. Ltd. ("Samsung") was and is a foreign corporation with a registered address at Samsung Fire & Marine Insurance Building, 29, Eulji-ro 1Ga, Jung-gu, Seoul, 100-782, REPUBLIC OF KOREA.

    12.   At all material times, Valero Marketing and Supply Company ("Valero") was and

is a Delaware corporation registered to do business in Texas with an office and place of business located at One Valero Way, San Antonio, Texas 78249, and a registered agent for service of process in New York.

13.     At all material times, Southern Marine & Aviation Underwriters, Inc. ("Southern Marine") was and is a Louisiana corporation registered to do business in Texas and New York with an office and place of business located at 121 River St. Hoboken, New Jersey 07030.

## THE VESSEL & ITS INSURANCE

14.     The *M/V SAMHO DREAM* is a 2002-built, 161,135 gross ton very large crude oil carrier (VLCC).  At all material times, the Vessel was owned by non-party SH Tankers Limited ("SH Tankers").

15.     At all material times, the Vessel was insured for war risks by plaintiff Samsung pursuant to policy of insurance number 9090108496000, dated September 21, 2009 (the "Samsung Policy").

16.     Under the Samsung Policy, Samsung retained 4.5% of the risk, 90% of the risk was reinsured by Garex, as lead underwriter, and 5.5% of the risk was reinsured by Starr.

## THE GENERAL AVERAGE EVENT AND VOYAGE

17.     On February 25, 2010, SH Tankers, as owner, and non-party Koch Shipping Inc. ("KSI"), as charterer, entered into a Shelltime 4 Time Charter Party for the Vessel (the "Time Charter").  Pursuant to the Time Charter, SH Tankers delivered the Vessel to KSI's service on March 12, 2010.

18.     On March 8, 2010, prior to SH Tankers' delivery of the Vessel to KSI, KSI sub-chartered the Vessel to Valero under an Exxonmobilvoy 2005 Voyage Charter Party (the "Voyage Charter").  The Voyage Charter provided for the voyage from one or two safe ports in

the Arabian Gulf to one or more lighterage locations in the United States Gulf of Mexico or the Caribbean.

19.     Between March 26 and March 28, 2010, the Vessel loaded a 330,203.439 cubic meters light crude oil at Basrah, Iraq (the "Cargo").   On March 28, 2010, SOMO issued one original and two duplicates of Bill of Lading number 5625 for the 330,203.439 cubic meters – or 2,076,921 barrels – Iraq Crude Oil (Basrah Light) in bulk.  Valero, as the Voyage Charterer, was the consignee of the Cargo.  Copies of the Bill of Ladings are annexed as Exhibit 1.

20.     On March 28, 2010, the Vessel departed from Basrah, Iraq, and proceeded to Fujairah, United Arab Emirates, where the Vessel bunkered (received fuel) on March 29, 2010. After bunkering was completed, the Vessel began its sea voyage to the Galveston, Texas, off-shore lightering area, located in the U.S. Gulf.

21.     On April 4, 2010, the Vessel was attacked and seized by armed Somali pirates on the high seas.  The Vessel and her crew were taken hostage and remained in captivity off the coast of Somalia for seven months.

22.     On July 29, 2010, shipowner SH Tankers declared general average arising out of the Vessel's seizure by Somali pirates.  A copy of the message is annexed as Exhibit 2.

23.     On November 6, 2010, the Vessel was released when Plaintiffs executed the payment of a ransom to the Somali pirates of several million dollars on behalf of SH Tankers.

24.     After the Vessel was finally released from the Somali pirates, it sailed to Salalah, Oman, as a Port of Refuge, to make a crew change, survey the Vessel, and to load bunkers.

25.     On December 17, 2010, SH Tankers, KSI, and Valero executed an agreement which provided that the Vessel would sail to Fujairah, United Arab Emirates, the Cargo would be transferred to another vessel for on-carriage to Galveston, Texas (a ship-to-ship or "STS"

transfer), KSI, Valero, and the Cargo underwriters (Southern Marine) would issue general average security, and the general average voyage would be deemed completed at Fujairah (the "STS Agreement"). A copy of the executed STS Agreement, without attachments, is annexed as Exhibit 3.

26.     In connection with the STS Agreement, on December 10, 2010, Valero executed an Average Bond as security for its "proper proportion of any … general average … which may hereafter be ascertained to be reasonably, legally and properly due … ." A copy of the Valero Average Bond is annexed as Exhibit 4.

27.     In connection with the STS Agreement, on November 10, 2010, Southern Marine executed an Average Guarantee as security for any contribution to General Average … which may hereafter be ascertained to be reasonably, legally and properly due … ." A copy of the Southern Marine Average Guarantee is annexed as Exhibit 5.

28.     Based specifically on these obligations by Defendants, the crude oil with an invoice value of over $164 million was transferred from the *M/V SAMHO DREAM* to the *M/V GEMINI GLORY* on January 13, 2011. Upon completion of the cargo transfer in Fujairah, the general average voyage was deemed complete in accordance with the STS Agreement.

## THE GENERAL AVERAGE ADJUSTMENT

29.     The Time Charter between SH Tankers and KSI provided: "General Average contributions shall be payable according to the York-Antwerp Rules, 1990 and 1994 as amended and shall be adjusted in New York in accordance with United States law and practice… ."

30.     The Voyage Charter between KSI and Valero provided: "General average shall be adjusted, stated and settled according to the York-Antwerp Rules 2004 and where matters are not provided for in the Rules, according to the laws and usages in the port of New York… . If a

General Average statement is required, it shall be prepared at such port by an Adjuster from the port of New York appointed by the Carrier and approved by Charterer of the Vessel."

31.    The Bill of Lading for the Cargo issued by the Master on behalf of the Vessel, provided "... all conditions and exceptions of which charter party ... are deemed to be incorporated in this Bill of Lading."

32.    On July 22, 2010, SH Tankers and KSI entered into an agreement for the general average adjustment to be performed in London or Liverpool by Richards Hogg Lindley ("RHL") in accordance with United States law and practice and issued by Richard Wood in New York or another adjuster in New York nominated by RHL. A copy of the executed agreement is annexed as Exhibit 6.

33.    On July 23, 2010, attorneys on behalf of the Cargo interests expressed no objection to the adjustment being performed by RHL.  A copy of counsel's letter on behalf of the Cargo interests is annexed as Exhibit 7.

34.    On or about September 30, 2014, RHL issued its Adjustment.  A copy of the Adjustment, without attachments, is annexed as Exhibit 8.

35.    On October 3, 2014, copies of the Adjustment were sent to counsel for both Valero and Southern Marine, stating that the proportion of the general average adjustment for Cargo's account was USD 8,179,001.25.  Copies of the emails to counsel, without attachments, are annexed as Exhibit 9.

36.    The adjustor's email instructions to Defendants' counsel provided bank account details so the immediate payment of Defendants' General Average contributions would be paid as is mandated by the General Average Guarantee and Bond executed in exchange for the release of the valuable Cargo.

37.     Despite explicit demands, reminders, and their obligations, to date, neither Valero nor Southern Marine have remitted any or part of the USD 8,179,001.25 due and owing.

38.     All conditions precedent to the filing of this action have been performed, waived, or excused.

**COUNT I CLAIM FOR RELIEF:**
**GENERAL AVERAGE CONTRIBUTION**

39.     Plaintiffs restate and re-allege the foregoing paragraphs of this Complaint as if fully set forth herein.

40.     The seizure, losses, damages, and injuries incurred by the *M/V SAMHO DREAM* were not caused or contributed to or by any fault, neglect, or want of care or design on the part of the Plaintiffs, or anyone for whom Plaintiffs may be responsible.

41.     Defendants agreed to the adjustment of general average by RHL.

42.     On April 4, 2010, the Vessel was attacked and seized by Somali pirates. As a result of the seizure, the Vessel was heavily damaged and large sums of money were expended to release the Vessel so that the crew could be rescued and sent for rehabilitation after the arduous captivity months and so that the Cargo could be delivered to Valero at its final destination.

43.     Pursuant to the contracts of carriage and applicable general maritime law, General Average was declared by the Owner of the Vessel on July 29, 2010.

44.     An expenditure qualifies for recovery in General Average if three conditions are met: 1) A common peril or danger that is "immediately impending;" (2) a voluntary sacrifice for the common benefit; and (3) the successful avoidance of the peril.

45.     Armed pirates attacked and seized the *M/V SAMHO DREAM* which created an immediate and continuing peril and danger to the Vessel, her crew, and the Cargo for seven months. The seven month captivity by the Somali pirates could and did physically and mentally

9

injure the crew, damaged the Vessel, and imperilled the Cargo. The negotiation and payment of the ransom was a sacrifice taken by Plaintiffs for the common benefit of the all participants in the maritime adventure to secure the release and safety of the Vessel, her crew, and the Cargo. Following delivery of the ransom payment, the Vessel, her crew and the Cargo were released, successfully ending the peril and, by agreement, the General Average event.

46.     Defendants' Cargo was then transshipped from the *M/V SAMHO DREAM* to the *M/V GEMINI GLORY* pursuant to contacts of carriage evidenced by certain bills of lading and by the STS Agreement and the Cargo was delivered to her ultimate consignee, defendant Valero.

47.     The sacrifices, expenditures, and disbursements made for the common benefit of all parties to successfully avoid the peril, qualify for recovery by Plaintiffs under the rules of General Average.

48.     Pursuant to the bills of lading, the Time Charter, the Voyage Charter, and the STS Agreement, Defendants are obligated to, joint and severally, contribute to the payment of any sacrifices, losses, and expenses in General Average as determined by the appointed General Average adjuster, RHL.

49.     On September 30, 2014, RHL issued a General Average Adjustment, according to which the proportion of General Average due from Valero and Southern Marine, as the cargo interests, was determined to be USD 8,179,001.25.

50.     In breach of the contracts of carriage and the duties undertaken in the General Average Bond, Valero has not made any payment due and owing in General Average despite due demand.

51.     In breach of the contracts of carriage and the duties undertaken in the General Average Guarantee, Southern Marine has not made any payment due and owing in General

Average despite due demand.

  **WHEREFORE**, Plaintiffs pray that:

  1. the Court order, adjudge, and decree that Plaintiffs have a joint and several decree against Defendants for general average in the amount of USD 8,179,001.25, together with interest and costs; and

  2. that Plaintiffs be granted such other and further relief as the Court may deem just and proper.

Date: New York, New York
   January 11, 2016

        Respectfully submitted,

        HOLLAND & KNIGHT LLP

    By: _____
        Christopher R. Nolan
        K. Blythe Daly
        31 West 52nd Street
        New York, NY 10019
        Tel: (212) 513-3200
        chris.nolan@hklaw.com
        blythe.daly@hklaw.com

        *Attorneys for Plaintiffs*